John L. Laekin, J.
This is an application, pursuant to CPLR 3212, for summary judgment in favor of defendants Carl A. Paulsen, James Willard Nelson, and Thomas Felix Dennys Oram, all of whom are physicians licensed to practice medicine in the State of New York. This is an action for alleged medical malpractice. The basis of this motion is that the action is barred by the applicable Statute of Limitations (CPLR 214. subd. 6).
The essential facts from which the underlying action arises have been set forth in the opposing affirmation of plaintiffs’ *937 attorney: ‘ ‘ The instant lawsuit arises out of malpractice committed by the defendants back in 1969, when plaintiff, Thomas Fonda, was ,a patient of Doctors Nelson and Paulsen at the Ellis Hospital, Schenectady, New York for the excision of a mass on his right flank * * * The operation was performed by defendant Nelson on or about May 13, 1969 * * e and thereafter on that date defendant Oram performed histological and microscopic studies on the excised tissue mass * * * Plaintiff was informed by Doctor Nelson that the growth was benign presumably following a consultation between Doctor Nelson and Doctor Oram. Thereafter the mass returned and in January of 1972 plaintiff * * * returned and was admitted as a patient of Doctors Nelson and Paulsen to the Ellis Hospital * * * The operation was performed by a Doctor Voss and thereafter tissue studies again were performed by defendant Oram on the exact same-type tissue that had originally (been) examined by him in 1969' * * * Thereafter Doctor Voss, for the first time informed plaintiff that he had Cancer and that the slides from the 1969 biopsy * * * had also been compared with these recent 1972 slides and it was found' out that they were essentially identical and that the cancer was also present in 1969 ”.
It is alleged that because of the negligence of the defendants, plaintiff Thomas V. Fonda, a married man with four infant children, is about to die of cancer. For the purposes of this motion, this court will assume the truth of each of these statements made on behalf of the plaintiffs (Patrolmen’s Benevolent Assn. of City of N. Y. v. City of New York, 27 N Y 2d 410).
CPLR 214 provides, in part:
“ The following actions must be commenced within three years * * *
“ 6. an action to recover damages for malpractice ’ ’. The original malpractice which is the .subject of this suit is founded upon an erroneous diagnosis which allegedly occurred in May, 1969. This action was not commenced until May, 1974, some five years later and1 well beyond the statutory limitation period.
In opposition to this application, plaintiffs rely upon two separate legal theories, the ‘ ‘ continuous treatment ’ ’ doctrine and, alternatively, the “ discovery rule ”. Both theories have been used by the New York 'State Court of Appeals to toll the running of the malpractice Statute of Limitations.
The Court of Appeals held in Borgia v. City of New York (12 N Y 2d 151, 155), that: “when the course of treatment *938 which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint ’ a malpractice cause of action does not accrue and the Statute of Limitations does not begin to run until the ‘ ‘ end of the treatment ’ ’. The court carefully limited its holding to cases of continuous treatment for the same or related condition (p. 157): “ We are warned of dire results from this holding. Patients, we are told, will úse this decision to justify suits brought years later. But this assumes that, so long as a patient continues to consult the same physician for any Mnd of illness, the time to sue as to any kind of malpractice will never start to run. We are creating no such situation. The ‘ continuous treatment ’ we mean is treatment for the same - or related illnesses or injuries, continuing after the alleged acts of -malpractice, not mere continuity of a general physician-patient relationship.” A reading of the various papers submitted both .in support of and.in opposition to this motion indicates that none of the moving defendants rendered such “ continuous treatment” to plaintiff, Thomas V. Fonda, so as to come within the purview of Borgia (supra).
The evidence is clear that defendant Oram, the pathologist at the defendant hospital, rendered no treatment of1 any nature to Mr. Fonda between 1969 and 1972. His only connection with Mr. Fonda was that nn two separate occasions, once in 1969 and once in 1972, he examined tissue which had been removed from this plaintiff.
There is no evidence that defendant Paulsen rendered any “treatment” whatsoever for any condition which was “ the same or related” to the alleged malpractice which occurred in 1969. Doctor Paulsen describes his professional contact with Mr. Fonda as follows: “ 2.1 first rendered professional services to the plaintiff * * * in January of 1970. At that time he complained, of .soreness in the back and buttocks and evidenced a mass in the latter region. 3. Subsequent to January, 1970, the plaintiff * * # did not return to see me until December of 1970 when he presented a knee injury * # * Surgery was performed on the injured knee in April of 1971. At that time no treatment was given with regard to the 'plaintiff (’s) * * * complaints .of January of 1970, because, as was the case in December of 1970, there were no such complaints.” Mr. Fonda indicates that he “complained” about discomfort in ,the area operated on in May, 1969 but he has failed to demonstrate any 11 treatment ’ ’ rendered by defendant Pauls'en .as .a result of such complaints. On this basis, this court *939 must hold that the running of the Statute of Limitations in connection with plaintiffs’ claims against defendant Paulsen is not tolled under the “ continuous treatment ” doctrine. Mr. Fonda was not treated for any condition by defendant Nelson subsequent to 1969. .The record is not clear whether defendants Paulsen and Nelson are partners, in which case each would be liable for any professional negligence of the other performed within the scope of the partnership business (45 N. Y. Jur., Physicians and Surgeons, § 165). In any event, in this case neither of these defendants is subject to any tolling of CPLB 214 (subd. 6) by the “ continuous treatment” doctrine.
The alternative theory relied upon by plaintiffs was set forth by the Court of Appeals in the leading case of Flanagan v. Mount Eden Gen. Hosp. (24 N Y 2d 427). In Flanagan (supra) the plaintiff underwent an operation in the defendant hospital on July 14, ,1958. Surgical clamps which were inserted into plaintiff’s body during the operation were allowed to remain within the body after the operation and not discovered until 1966. The Court of Appeals limited its decision to answering the ‘ ‘ narrow question ” of ‘ ‘ when should the Statute of Limitations begin ,to run in a foreign object medical malpractice case” (Flanagan, supra, p. 429). The court enunciated what has become known ,as the “ discovery rule ” in the following •terms (p. 431): “ where a foreign object has negligently been left in the patient’s body, the Statute of Limitations will not begin to run until the patient could have reasonably discovered the malpractice.”
Plaintiffs’ argument under the discovery rule is as follows: “ The leaving in of cancer is as much a 1 foreign body ’ as the leaving .in of a clamp * * * Cancer is not an inherent substance in the human body but only develops and when there is cancer that should have been removed and which remains unremoved because of the malpractice of defendants, from that point on if never before it becomes a foreign substance, left in by the defendants and which would clearly, under all principles of justice and equity then fall under the exception to the three year malpractice rule and permit the Statute to run three years from the date of discovery ”.
The principal case cited in support of plaintiffs ’ interesting and novel theory that negligently undetected cancer is a “foreign body ” within the purview of Flanagan (supra), is Dobbins v. Clifford (39 A D 2d 1), decided by the Appellate Division, Fourth Department. In Dobbins the plaintiff underwent an operation on March 10, 1966 for the removal of his spleen. *940 Plaintiff claimed that he discovered in January, 1970 this his pancreas had been severely injured during the course of said operation and commenced an action for malpractice on February 28, 1970. In affirming (the lower court order, the court denied defendant’s motion ,to dismiss the complaint under the three-year Statute of Limitations and extended Flanagan (supra) 'to cover1 the situation present •“ since the same fundamental factors are present in each. They are: an act of malpractice committed internally so that discovery is difficult; real evidence of the malpractice in the form of the hospital record is available at the time of suit; professional diagnostic judgment is not involved, and there is no danger of false claims ’ ’ (jBobbins, supra, pp. 3-4).
This court does, .not feel the (expansion of the ‘ ‘ foreign object ” rule in Dobbins (supra) conforms to the very narrow holding of Flanagan (supra). The Court of Appeals specifically mentioned and failed to adopt a broad discovery test, then the law in 11 jurisdictions in this country, for all malpractice cases regardless of whether a foreign object is involved, The court specifically adopted a limited discovery rule applicable to cases where a foreign object, .such as the surgical clamps in issue therein, is negligently left in the patient’s body (Flanagan, supra, pp. 431-432). It is the conclusion of this court that the Flanagan .rule does not provide for the characterization of ah injured pancreas, as in Dobbins, or negligently overlooked cancer, as in the instant case, as a ‘1 foreign body” so as to toll the running of the statute until its discovery.
The theory set forth by the plaintiffs in this ease was specifically rejected by the Appellate Division, Second Department, in Schiffman v. Hospital for Joint Diseases (36 A D 2d 31). In that case plaintiff’s cause ¡of action, as in the instant case, arose from the allegedly negligent examination of a specimen of plaintiff’s tissue by members of the department of pathology of the defendant hospital. In Schiffmmi the biopsy slides were allegedly 'misread as cancer when none existed, the reverse of the case at hand. Plaintiff .alleged .that he suffered the administration of unnecessary radiation therapy causing him personal injury. The court held that the “ discovery rule ” of Flanagan (supra) did not encompass the late discovery of an .alleged misreading of biopsy slides: F In the appeal before us, the plaintiff’s action does not concern a foreign object, but rather a misreading of the biopsy slides to arrive at a mistaken diagnosis of malignancy. The claim of negligence relates to a misdiagnosis of ailment, an area of the physician-patient *941 relationship not touched by the Flanagan- holding. We do not think we should further contract the general rule applicable to diagnostic negligence by marking the beginning of the time permitted for the commencement of ,an action for malpnactice by the date of the patient’s discovery of the physician’s negligence ” '(Schiffman, supra, p. 33). In view of the principles enunciated by the Flanagan and Schiffman cases, this court cannot accept the argument advanced by plaintiffs that the ‘ ‘ foreign body ’ ’ exception of Flanagan .should be extended to the instant factual situation.
In view of this court’s determination that the “discovery rule ” of Fla/nagan is inapplicable to this case, it is unnecessary to consider the further argument advanced by the moving defendants that even if the ‘1 discovery rule ’ ’ were found to apply, the action herein would ibe barred by CPLR 203 (subd. M).
The motion is granted in all respects.