Slapo v Winthrop Univ. Hosp. (2020 NY Slip Op 04887)





Slapo v Winthrop Univ. Hosp.


2020 NY Slip Op 04887


Decided on September 2, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
ROBERT J. MILLER
BETSY BARROS
ANGELA G. IANNACCI, JJ.


2018-11791
 (Index No. 604139/14)

[*1]Jacqueline Slapo, as executor of the estate of Daniel Slapo, appellant, 
v
Winthrop University Hospital, respondent, et al., defendants.


Sonin & Genis (Alexander J. Wulwick, New York, NY, of counsel), for appellant.
Bower Law, P.C., Uniondale, NY (Anina H. Monte and Gianna Crespo of counsel), for respondent.
Murphy, Higgins & Schiavetta, PLLC, New Rochelle, NY (Daniel Schiavetta, Jr., of counsel), for defendants Forest Manor Care Center, Inc., doing business as Glen Cove Center for Nursing and Rehabilitation, and Glen Cove Center for Nursing and Rehabilitation.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the plaintiff appeals from an order of the Supreme Court, Nassau County (Jerome C. Murphy, J.), entered September 14, 2018. The order, insofar as appealed from, granted those branches of the motion of the defendant Winthrop University Hospital which were for a protective order limiting the scope of the continued deposition of Harold Brem to the extent of limiting further questioning of him solely to his observations and treatment of decubitus ulcers sustained by Daniel Slapo and prohibiting the plaintiff from eliciting that witness's expert opinion, and to direct that the continued deposition of that witness be supervised by a special referee at the plaintiff's expense.
ORDERED that the order is modified, on the law and in the exercise of discretion, (1) by deleting the provision thereof granting that branch of the motion of the defendant Winthrop University Hospital which was for a protective order limiting the scope of the continued deposition of Harold Brem to the extent of prohibiting the plaintiff from eliciting that witness's expert opinion, and substituting therefor a provision granting that branch of the motion to the extent of prohibiting the plaintiff from eliciting that witness's expert opinion except to the extent that it relates to his role in the diagnosis, care, and treatment of Daniel Slapo on October 3 and 4, 2012, and (2) by deleting the provision thereof granting that branch of the motion of the defendant Winthrop University Hospital which was to direct that the continued deposition of Harold Brem be supervised by a special referee at the plaintiff's expense, and substituting therefore a provision granting that branch of the motion to the extent of directing that a court-employed special referee, a judicial hearing officer, or a court attorney referee be appointed pursuant to CPLR 3104 to supervise the continued deposition; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
Daniel Slapo commenced this medical malpractice action, alleging that he was a patient at the defendant Winthrop University Hospital (hereinafter Winthrop) from August 15, 2012, [*2]to October 4, 2012, and as a result of the defendants' negligence, he suffered serious and permanent injuries, including hospital-acquired decubitus pressure ulcers and amputation of his left leg above the knee. Harold Brem, who was not named as a defendant in the action, was the Chief of the Division of Wound Healing and Regenerative Medicine at Winthrop and was involved in Slapo's treatment on October 3 and 4, 2012. Brem was deposed on April 27, 2017, and, at that time, was still the Chief of the Division of Wound Healing and Regenerative Medicine at Winthrop. During his deposition, Brem refused to answer certain questions, and Slapo's counsel reserved the right to a further deposition. In an order dated March 29, 2018, the Supreme Court granted that branch of Slapo's motion which was to continue the deposition of Brem, but noted that Brem was no longer employed by or under the control of Winthrop, and that Slapo was required to serve a nonparty subpoena in order to continue Brem's deposition.
Thereafter, Winthrop moved, inter alia, for a protective order limiting the scope of Brem's continued deposition and to direct that the defendants' remaining depositions be supervised by a court-appointed special referee at the plaintiff's expense. In the order appealed from, the Supreme Court, inter alia, granted those branches of Winthrop's motion which were for a protective order to the extent of limiting further questioning of Brem solely to his observations and treatment of the decubitus ulcers sustained by Slapo and prohibiting Slapo from eliciting Brem's expert opinion, and to direct that the continued deposition of Brem be supervised by a special referee at Slapo's expense. Contrary to the interpretation of our dissenting colleague, it is undisputed by the parties that the order appealed from, while inartfully drafted, directed that Brem's deposition be supervised by a special referee at the plaintiff's expense. In the order appealed from, the court determined that, during more than six hours of questioning, Slapo's attorney asked patently irrelevant questions that were "intended to frustrate the witness, and not directed toward the discovery of relevant evidence in the prosecution of this matter." Slapo appeals. While the appeal was pending, Slapo died, and Jacqueline Slapo, as executor of Slapo's estate, was substituted as the plaintiff.
It is a fundamental principle in civil litigation that "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof" (CPLR 3101[a]; see Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 405-407; Berkowitz v 29 Woodmere Blvd. Owners', Inc., 135 AD3d 798, 799). "However, unlimited disclosure is not mandated, and the rules provide that the court may issue a protective order denying, limiting, conditioning or regulating the use of any disclosure device to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts" (Berkowitz v 29 Woodmere Blvd. Owners', Inc., 135 AD3d at 799 [internal quotation marks omitted]; see CPLR 3103[a]; McAlwee v Westchester Health Assoc., PLLC, 163 AD3d 547, 548). "Upon the motion of any party or witness on notice to all parties or on its own initiative without notice, the court in which an action is pending may by one of its judges or a referee supervise all or part of any disclosure procedure" (CPLR 3104[a]; see Parker v Ollivierre, 60 AD3d 1023, 1024).
Discovery determinations are discretionary, and the trial court possesses wide discretion to decide whether information sought is material and necessary to the prosecution or defense of an action (see Vargas v Lee, 170 AD3d 1073, 1076). "[A]bsent an error of law or an improvident exercise of discretion, this Court will not disturb a trial court's discretionary discovery determination" (id. at 1076; see Forman v Henkin, 30 NY3d 656, 662; McAlwee v Westchester Health Assoc., PLLC, 163 AD3d at 548; Berkowitz v 29 Woodmere Blvd. Owners', Inc., 135 AD3d at 799).
Here, the Supreme Court providently exercised its discretion in granting those branches of Winthrop's motion which were for a protective order to the extent of limiting further questioning of Brem solely to his observations and treatment of decubitis ulcers sustained by Slapo and to direct that Brem's continued deposition be supervised by a special referee. While we agree with the court's characterization of the improper conduct of Slapo's attorney at Brem's deposition, we observe that the defense attorneys violated 22 NYCRR 221.1 by making numerous objections and making speaking objections. We further note that Brem violated 22 NYCRR 221.2 by refusing to answer questions. Given the obstructive conduct by the defense attorneys and Brem in violation of 22 NYCRR part 221, and the improper conduct of Slapo's attorney during the deposition, we [*3]agree with the court that appropriate supervision of the balance of Brem's deposition is necessary. Because both sides have engaged in arguably sanctionable conduct during the course of Brem's deposition (see 22 NYCRR part 221, subpart 130-1), it was inappropriate to compel the plaintiff to solely bear the cost of supervision thereof. Further, without the consent of all the parties, the court may not compel a party to pay for or contribute to the cost of an outside referee (see CPLR 3104[b]; Ploski v Riverwood Owners Corp., 255 AD2d 24, 26). Accordingly, we modify the order so as to direct that Brem's continued deposition be supervised by a court-employed special referee (see Ploski v Riverwood Owners Corp., 255 AD2d 24), a judicial hearing officer, or a court attorney referee.
Considering the topics covered during Brem's first deposition, the plaintiff may elicit, at the continued deposition, expert opinion from Brem only with regard to his role in the diagnosis, care, and treatment of Slapo on October 3 and 4, 2012.
AUSTIN, J.P., MILLER and BARROS, JJ., concur.
IANNACCI, J., dissents, and votes to dismiss the appeal from so much of the order as denied that branch of the motion of the defendant Winthrop University Hospital which was to direct that the continued deposition of Harold Brem be supervised by a special referee at the plaintiff's expense, as the plaintiff is not aggrieved by that portion of the order (see CPLR 5511; Mixon v TBV, Inc., 76 AD3d 144), and to reverse the order insofar as reviewed, on the law and in the exercise of discretion, and deny that branch of the motion of the defendant Winthrop University Hospital which was for a protective order limiting the scope of the continued deposition of Harold Brem, with the following memorandum:
This appeal involves an order of the Supreme Court which prospectively limited the continued deposition of a treating doctor and employee of the defendant Winthrop University Hospital (hereinafter Winthrop), Harold Brem, who was Chief of the Division of Wound Healing and Regenerative Medicine at Winthrop and was being deposed as a representative of Winthrop. Although a prior order granted that branch of Daniel Slapo's motion which was to continue, unrestricted, Brem's deposition, the order appealed from limited any further questioning of Brem solely to his observations and treatment of the decubitus ulcers sustained by Slapo. While the majority decision modifies the order by allowing the plaintiff to elicit expert opinion only to the extent that it relates to Brem's role in the diagnosis, care, and treatment of Slapo on October 3 and 4, 2012, there should not be prospective limitations with date restrictions to Brem's deposition testimony because he was not only a treating physician, but also an employee of Winthrop and was the Chief of the Division of Wound Healing and Regenerative Medicine. He rendered care, treatment, and diagnosis to Slapo, which may have included a review, prior to seeing Slapo on October 3 and 4, 2012, of medical records, rules, procedures, and promulgated protocols such as the three volumes of medical records, photos, and skin assessment resource guide that were marked as exhibits during the first incomplete deposition. Such a review may have assisted Brem in formulating his differential diagnosis. Therefore, I respectfully do not agree with the majority to restrict Brem's deposition questioning to the specific dates of October 3 and 4, 2012.
In this medical malpractice action, Slapo alleged that he was a patient at Winthrop from August 15, 2012, to October 4, 2012, and, as a result of the defendants' negligence, he suffered serious and permanent injuries, including hospital-acquired decubitus pressure ulcers and the amputation of his left leg above the knee. Slapo's bill of particulars alleged that Winthrop, negligently and carelessly, was deficient in the care provided and delivered to Slapo by its medical staff.
On April 27, 2017, Winthrop was deposed and produced Brem, who, at that time, was still the Chief of the Division of Wound Healing and Regenerative Medicine at Winthrop. Before the deposition, the parties stipulated that all rights provided by the Civil Practice Law and Rules, including, inter alia, the right to object to any question, except as to form, or to move to strike any testimony at this examination, were reserved for the trial. While Winthrop produced Brem for the deposition, Matthew Yoeli, counsel for the defendants Jason Gould and Winthrop Orthopedic [*4]Associates, P.C., represented Brem at the deposition. According to Brem's curriculum vitae, marked as an exhibit at his deposition, and his deposition testimony, he worked for Winthrop as the Chief of the Division of Wound Healing and Regenerative Medicine (hereinafter the Division). Brem testified that the Division is part of the Department of General Surgery and its exclusive focus is patients who have wounds, as Chief of the Division, he oversaw one of the leading clinical wound care programs, and he has been involved in wound care for 28 years. During the deposition, Yoeli objected more than 400 times, made a number of improper speaking objections, and directed Brem not to answer questions at least 9 times.
At the conclusion of Brem's deposition, Slapo's attorney reserved the right to conduct a continued deposition due to Yoeli's obstructionist behavior and direction to Brem not to answer certain questions, and Brem's refusal to answer questions. Thereafter, Slapo moved, inter alia, to compel Winthrop to produce Brem for a continued deposition.
In an order dated March 29, 2018, the Supreme Court directed the continued deposition of Brem without any limitation since it appeared to the court that counsel representing Brem "went far beyond the objections that were to be made at this deposition and as were agreed to in the stipulation of the parties," and directed that all depositions be completed by May 9, 2018. No appeal was taken from that order, and no motion was made by the defendants for leave to reargue.
Several months later, the defendants Forest Manor Care Center, Inc., doing business as Glen Cove Center for Nursing and Rehabilitation, and Glen Cove Center for Nursing and Rehabilitation moved, inter alia, for a protective order limiting the scope of the defendants' depositions. On June 9, 2018, Winthrop moved, inter alia, for a protective order limiting the scope of Brem's continued deposition, which had been already directed without limitation in the prior order dated March 29, 2018, and to direct that all subsequent defendants' depositions be conducted under the supervision of a court-appointed special referee at Slapo's expense.
In the order appealed from, dated September 7, 2018, the Supreme Court granted that branch of Winthrop's motion which was for a protective order to the extent of limiting further questioning of Brem solely to his observations and treatment of decubitus ulcers sustained by Slapo. The court stated: "Motion Seq. No. 2, for a protective order directing any further or continued deposition of Dr. Gould to be under the supervision of a special referee, the cost of whom is borne by plaintiff, is granted. The motion for the same relief as to Dr. Brem in Motion Sequence No. 4, is granted, but only to the extent that further questioning of Dr. Brem is to be limited solely to his observations and treatment of decubitus ulcers sustained by plaintiff. Plaintiff cannot compel a non-party witness to answer questions which seeks [sic] their expert opinions" (emphasis added).
The deposition of Gould was conducted and completed without a special referee.
On appeal, the plaintiff asserts that it was error for the Supreme Court to appoint a special referee to supervise Brem's continued deposition and to prospectively limit the questioning of Brem.
CPLR 3101 provides: "(a) Generally. There shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof, by: (1) a party, or the officer, director, member, agent or employee of a party; . . . and (4) any other person, upon notice stating the circumstances or reasons such disclosure is sought or required."
The words "material and necessary" are "to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [internal quotation marks omitted]; see Vargas v Lee, 170 AD3d 1073; Cajamarca v Osatuk, 163 AD3d 619, 620).
With regard to conducting depositions, Uniform Rules for Trial Courts (22 NYCRR) § 221.1, entitled "Objections at Depositions," provides, in pertinent part: "(a) Objections in general. [*5]No objections shall be made at a deposition except those which, pursuant to subdivision (b), (c) or (d) of Rule 3115 of the Civil Practice Law and Rules, would be waived if not interposed, and except in compliance with subdivision (e) of such rule. All objections made at a deposition shall be noted by the officer before whom the deposition is taken, and the answer shall be given and the deposition shall proceed subject to the objections and to the right of a person to apply for appropriate relief pursuant to article 31 of the CPLR." Uniform Rules for Trial Courts (22 NYCRR) § 221.2, entitled "Refusal to answer when objection is made," provides, in pertinent part: "A deponent shall answer all questions at a deposition, except (i) to preserve a privilege or right of confidentiality, (ii) to enforce a limitation set forth in an order of a court, or (iii) when the question is plainly improper and would, if answered, cause significant prejudice to any person. An attorney shall not direct a deponent not to answer except as provided in CPLR Rule 3115 or this subdivision." Uniform Rules for Trial Courts (22 NYCRR) part 221 clearly provides that there shall be no direction not to answer unless one of the exceptions exists (see Yoshida v Hsueh-Chih Chin, 111 AD3d 704). None of those exceptions apply in this case.
To reiterate, there was no limitation set forth in the Supreme Court's order dated March 29, 2018, nor was it noted that there were any objections claiming privilege or that the questions were improper and would, if answered, cause significant prejudice to any person.
The "plaintiff in a malpractice action is entitled to call the defendant doctor to the stand and question him [or her] both as to his [or her] factual knowledge of the case (that is, as to his [or her] examination, diagnosis, treatment and the like) and, if he [or she] be so qualified, as an expert for the purpose of establishing the generally accepted medical practice in the community" (McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20, 29-30). For the purpose of pretrial examination, a nonparty treating physician who is, or is deemed to be, an employee of a defendant may be questioned with regard to his or her factual observations, and also in his or her potential capacity as an expert (see Hardter v Semel, 197 AD2d 846, 847; Glass v Rochester Gen. Hosp., 74 AD2d 732, 732; Johnson v New York City Health & Hosps. Corp., 49 AD2d 234, 236; cf. Carvalho v New Rochelle Hosp., 53 AD2d 635).
It is well settled that a trial court should not rule on the propriety of deposition questions which have not yet been asked, because such rulings should be made after a specific question has been asked and its answer refused (see K.S. v City of New York, 56 AD3d 527; Eliali v Aztec Metal Maintenance Corp., 287 AD2d 682; Tardibuono v County of Nassau, 181 AD2d 879).
Here, the transcript of Brem's deposition clearly states "EXAMINATION BEFORE TRIAL of WINTHROP UNIVERSITY HOSPITAL, one of the Defendants herein, by DR. HAROLD BREM," and that the parties thereto stipulated that all rights provided by the Civil Practice Law and Rules, including, inter alia, the right to object to any question, except as to the form, or to move to strike any testimony at this examination, were reserved for the trial. Moreover, even if Yoeli claimed that Brem was a nonparty witness, Brem testified that he was still an employee of Winthrop. Further, it was Winthrop, not Brem himself, that moved for the protective order limiting the scope of Brem's continued deposition, and that motion was made well beyond the date set for completion of depositions in the March 29, 2018, order. In addition, although Brem was not named as a defendant, Slapo's bill of particulars alleged that Winthrop, negligently and carelessly, was deficient in the care provided and delivered by its medical staff, and thus, Winthrop potentially could be held vicariously liable for the actions of Brem, its employee. Under these circumstances, the Supreme Court improvidently exercised its discretion in directing that the plaintiff could not question Brem as an expert in his field during his continued deposition (see Johnson v New York City Health & Hosps. Corp., 49 AD2d at 235-236, 235 n 1; see also Hardter v Semel, 197 AD2d at 847; Horowitz v Upjohn Co., 149 AD2d 467; Glass v Rochester Gen. Hosp., 74 AD2d at 732; cf. Carvalho v New Rochelle Hosp., 53 AD2d at 635).
The broad scope of discovery requires witnesses at a deposition to answer all questions regardless of their admissibility at trial, because those objections are reserved for trial. Therefore, the prospective limitation and restriction of the questioning of Brem was an improvident exercise of discretion.
While the appointment of a court-employed special referee to supervise the continued deposition of Brem may facilitate the speedy completion of Brem's deposition, I note that the Supreme Court denied that branch of Winthrop's motion which was to direct that Brem's continued deposition be supervised by a special referee and, therefore, the plaintiff is not aggrieved by that portion of the order.
Accordingly, I respectfully disagree with the conclusion reached by my colleagues in the majority and would reverse that portion of the Supreme Court's order which limited the scope of Brem's deposition.
ENTER:
Aprilanne Agostino
Clerk of the Court